UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


David Ivan Platon

     v.                                 Civil No. 11-cv-495-JD

Michael J. Astrue, Commissioner,
Social Security Administration


O R D E R

David Ivan Platon seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration, denying his application for disability insurance benefits.  Platon renews his request that the Commissioner review the denial of disability insurance benefits in light of the Social Security Administration's decision on January 4, 2012, that granted his application for Supplemental Security Income benefits.  Platon also contends that the Administrative Law Judge ("ALJ") erred in denying his disability insurance benefits application, by failing to properly consider the medical evidence and by failing to properly consider his complaints of the effects of his impairments.  The Commissioner moves to affirm the decision.


Background

Platon applied for disability insurance benefits on December 12, 2008, alleging an onset of disability as of November

25, 2008, due to body pain and diverticulitis.  He was forty years old when he applied for benefits.  Platon had a high school equivalency diploma; could speak, read, and write in English, and had past relevant work as a construction laborer.

A.  Medical Records and Capacity Assessments

On February 26, 2008, Platon saw Julie McGinnis, a physician's assistant ("PA"), due to complaints of lower back pain radiating to his legs.  PA McGinnis diagnosed lower back pain and anxiety and prescribed Klonopin, Cymbalta, and physical therapy.  From March through November of 2008, Platon had physical therapy for lower back pain.  His pain continued, particularly on rainy days.

In April of 2008, Platon saw PA McGinnis for abdominal pain. His physical examination provided normal results.  PA McGinnis diagnosed diverticulitis, inflamation of the colon, and lower back pain.  On follow up, Platon reported that he was doing much better.  Examination produced normal results.  PA McGinnis diagnosed diverticulitis.  On April 24, 2008, another physician assistant and Dr. Russell Brummett diagnosed Platon with degenerative disc disease of the lumbar spine, recommended a home exercise program, and prescribed a Medrol Dosepack.

On September 3, 2008, Platon was examined by PA McGinnis because of complaints of pain in his back, legs, and arms that he said had first occurred a year before when he fell off of a

2

ladder.  PA McGinnis found generally normal results, a full range
of motion in all joints, but generalized muscle tenderness.  She
diagnosed arthralgia, joint pain, and myalgia, which is muscle
pain.

On September 8, 2008, Platon went to Parkland Medical Center
for pain in his left shoulder and hand that he said were due to a
motor vehicle accident.  On examination, Platon had no neck or
back pain and had a normal range of motion in each but tenderness
in the left shoulder, wrist, and hand.  The diagnosis was a
sprain.  Five days later, Platon again went to Parkland Medical
Center for pain in his back and left hand due to the motor
vehicle accident.  X-rays showed no fractures.  He had normal
ranges of motion, strength, reflexes, and mobility.  He was
diagnosed with back pain and a sprained left wrist.

 Dr. Theodore T. Brooks, Platon's primary care physician at
the Derry Medical Center, saw him on September 17, 2008, because
of complaints of pain in his left hand from the motor vehicle
accident.  Dr. Brooks noted that Platon had no swelling but did
have decreased range of motion in his left wrist along with
painful movement and tenderness.  Dr. Brooks diagnosed a sprained
wrist and instructed Platon to wear a splint for two weeks and to
start exercises after two weeks.

Dr. Brooks referred Platon to Dr. Andrea B. Schneebaum, a
rheumatologist at the Derry Medical Center, for complaints of
pain in his back and legs, and Dr. Schneebaum saw Platon the same

3

day.  Dr. Schneebaum found that Platon had good joint mobility,
negative straight leg raising test, normal motor strength and
reflexes, and minor discomfort in palpation of the pelvis area.
Dr. Schneebaum thought that Platon possibly was developing
secondary myofascial pain syndrome and prescribed Neurontin.  She
also thought he would be a candidate for physical therapy.

Platon had a physical therapy appointment on October 16,
2008, for treatment of neck pain.  He told the provider that he
had worked eight hours that day installing sheet rock.  He said
that he had pain in his feet and legs because he had not worked
in a long time although he reported his pain as a 4 on a scale of
1 to 10.

On October 29, 2008, Platon saw Dr. Brooks for complaints of
chronic back pain, inability to do his job, and a need for pain
medication.  On examination, Dr. Brooks found that Platon had a
decreased range of motion, tenderness, and painful movements in
his spine but was in no acute distress, had no deformities, and
his straight leg test was negative.  Dr. Brooks diagnosed lower
back pain and prescribed Neurontin and Vicodin.  PA McGinnis saw
Platon on November 24, 2008, and made similar findings.

Platon had a magnetic resonance imaging ("MRI") study of the
cervical spine done on December 1, 2008.  The MRI showed a
posterior central disc protrusion at level C5-6.  He saw Dr.
Brooks again on December 10, 2008.  Dr. Brooks again found that
Platon was in no acute distress but had tenderness, abnormal

movements, and decreased range of motion in the neck and spine. Dr. Brooks diagnosed fibromyalgia and neck and lower back pain. In Dr. Brooks's opinion, Platon was unable to work and his condition was a "long-term situation." Dr. Brooks reiterated his diagnosis of fibromyalgia on January 14, 2009.

Paula LeBrun, a "Single Decision Maker" for the Disability Determination Services, completed a physical residual functional capacity assessment of Platon on January 23, 2009. She noted Dr. Brooks's opinion that Platon was unable to work. She also noted, that Platon's records showed some limitation in range of motion at times but that physical therapy reported normal ranges of motion, and that no medical provider had put restrictions on his activities. In addition, LeBrun noted that Platon used marijuana daily and cocaine weekly. She concluded that Platon had no limitations in his physical abilities.

Platon saw Dr. Brooks in March of 2009. Dr. Brooks repeated his diagnosis of fibromyalgia. Platon also saw Dr. Scott J. Low at Derry Medical Center, who diagnosed diverticulitis of the colon. X-rays of Platon's abdomen done on March 30, 2009, showed normal findings.

In April, Platon saw Dr. Schneebaum for complaints of pain. Dr. Schneebaum restated her diagnosis of secondary myofascial pain. She continued Platon's prescription for Lyrica and added an antidepressant.

5

Platon saw Dr. Low twice in May for joint pain.  Dr. Low noted that Platon said that he was following up on fibromyalgia. On examination, Dr. Low found that Platon had painful movements and generalized muscle tenderness.  Dr. Low noted Dr. Brooks's diagnosis of fibromyalgia and prescribed Zoloft and Lyrica.  An MRI of Platon's right hip on June 8, 2009, showed normal results. Dr. Brooks continued the diagnosis of fibromyalgia after seeing Platon in September of 2009 and prescribed Percocet.

PA McGinnis saw Platon in October of 2009 for complaints of diverticulitis.  On November 5, 2009, "computed tomography scans" of Platon's abdomen and pelvis showed diverticulitis of the colon.  Platon saw another physician assistant on November 9, 2009, for diverticulitis.  Platon also saw Dr. Brooks for fibromyalgia pain and diverticulitis.

Following a diagnosis at Parkland Medical Center of acute diverticulitis, Platon was referred to Dr. Volker Kropp for sigmoid diverticulitis.  Dr. Kropp noted that Platon had only the slightest tenderness and that despite being on disability for fibromyalgia Platon appeared to be "completely uncompromised." He also said that if Platon had another bout of diverticulitis, he should be hospitalized for maximum treatment and testing.

Platon had regular appointments with Dr. Brooks for complaints of fibromyalgia.  Following each examination, Dr. Brooks noted that Platon was alert, oriented, in no acute distress; had a full range of motion in his neck; no edema in his

legs; but had tenderness in his thighs and spine.  On August 31, 2009, Dr. Brooks completed a physical residual functional capacity assessment for Platon.  Dr. Brooks wrote that fibromyalgia and chronic back pain frequently interfered with Platon's ability to perform even simple work tasks, that he could not walk more than two city blocks, that he could not sit longer than five minutes at a time, that he could not stand for more than fifteen minutes, that he could not sit and stand for more than two hours total in a work day, and that he could not lift or carry more than twenty pounds occasionally.  Dr. Brooks found other limitations for postural activities and for grasping, turning, and manipulating objects.  He also stated that Platon would be absent from work more than four days per month, that he would have to walk every ten minutes, that he would have to be able to shift positions at will, and that he would need to take frequent unscheduled breaks in a work day.

In his own function report for the Social Security Administration, which is not dated, Platon stated that he was in pain all day and that he stayed home and read his Bible.  He said he needed pain medication to do housework, that he prepared his meals every three days, and that he drove a car and shopped once every two weeks.  He said that he was able to pay bills and handle his financial affairs but that he could not count change because of pain.  He also said he could walk no more than a block

before needing fifteen minutes of rest and that he could not move
because his joints stiffened up.

The administrative record shows that Platon continued to
have appointments with Dr. Brooks through November of 2010.   In
November, Dr. Brooks added carpal tunnel syndrome to his
diagnoses.

B.   Hearing

A hearing was held before an ALJ on April 15, 2011.[1]   Platon
was represented by counsel and testified at the hearing.   In
addition, an independent medical expert, Dr. Amy Hopkins, and a
vocational expert, Howard Steinberg, testified.

Platon testified that he was disabled by pain in his legs,
back, and arms.   He said that he had diverticulitis, arthritis,
fibromyalgia, and numbness in his hands.   He described his
activities as being very limited because he had to lie down all
the time.   He said that he stayed at home, watched television,
read the Bible, did laundry, cooked, and shopped.   He said that
he had trouble gripping items, that he could sit for only fifteen
minutes, that he could stand for no more than five to ten
minutes, and that he could walk for no more than thirty minutes.

Dr. Hopkins testified that Platon did not have a condition
that met any of the listed impairments in the medical listings

---

[1]Although the parties' "Joint Statement of Material Facts"
states that the ALJ was Thomas Maro, the decision is signed by
Thomas Merrill.

found at 20 C.F.R. Part 404, Subpart P, Appendix 1.  She said
that Platon had to avoid doing heavy work but that he could sit,
stand, and walk without limitations.  Although he could do work
at the medium exertional level, he could do postural activities,
such as stooping and crawling, only occasionally.  Dr. Hopkins
further stated that Dr. Brooks's findings in his August of 2010
functional capacity assessment were not supported by the medical
evidence.  Steinberg testified in response to hypothetical
questions that a person who could do work at the medium level but
could do postural activities only occasionally could not do
Platon's past work but could work as a building materials sales
person, a grocery bagger, a job packer, a fast food worker, a
courier, an office mail clerk, and a cashier.

C.  Decision

       The ALJ issued a decision on May 6, 2011, denying benefits.
The ALJ found that Platon had severe impairments caused by
diverticulitis, a history of polysubstance abuse, and myofascial
pain syndrome but that he did not have an impairment or
combination of impairments that met or equaled a listed
impairment.  The ALJ also found that Platon retained the capacity
to do medium work that required postural activities only
occasionally.  Based on those findings, the ALJ concluded that
Platon could not return to his previous work but that he could do
work in the jobs identified at the hearing by the vocational

expert.  The Appeals Council denied Platon's request for review, making the ALJ's decision the final decision of the Commissioner.

D.  Subsequent Determination on Separate Application

On January 4, 2012, the Social Security Administration granted Platon's application for supplemental security income benefits.  That application was filed on July 22, 2011, after the application at issue in this case was denied.

Standard of Review

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

Disability, for purposes of social security benefits, is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12
months." 20 C.F.R. § 404.1505(a).  The ALJ follows a five-step
sequential analysis for determining whether a claimant is
disabled.  § 404.1520.  The claimant bears the burden, through
the first four steps, of proving that his impairments preclude
him from working.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st
Cir. 2001).  At the fifth step, the Commissioner determines
whether other work that the claimant can do, despite his
impairments, exists in significant numbers in the national
economy and must produce substantial evidence to support that
finding.  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

## Discussion

    In support of his motion, Platon asks the Commissioner to
voluntarily agree to remand the case based on the subsequent
favorable determination on his supplemental security income
application.  Platon also argues that the decision must be
reversed and remanded because the ALJ failed to evaluate the
medical evidence properly, failed to credit Platon's subjective
statements about his symptoms, and failed to properly assess his
residual functional capacity.  The Commissioner moves to affirm
the decision and declines to remand the case.


A.  Voluntary Remand

    The Social Security Administration provides policies and
procedural guidelines through an internal manual, "Hearings,

Appeals and Litigation Law Manual" ("HALLEX").  See Chaluisan v. Comm'r of Social Sec., 2012 WL 2004983, at *2 (3d Cir. June 4, 2012); see also Bordes v. Comm'r of Social Sec., 235 Fed. Appx. 853, 857 n.7 (3d Cir. 2007).  Most courts have held that "HALLEX does not impose judicially enforceable duties on either the ALJ or this court." Lockwood v. Comm'r Social Sec. Admin., 616 F.3d 1068, 1072 (9th Cir. 2010); accord Davenport v. Astrue, 417 Fed. Appx. 544, 547-48 (7th Cir. 2011) (citing cases).  The Fifth Circuit alone applies a different standard that prejudicial failure by the Social Security Administration to follow its own internal procedures is subject to judicial review.  Shave v. Apfel, 238 F.3d 592, 596-97 (5th Cir. 2001).

Platon cites HALLEX I-4-101, II, B.2 to support his request for a voluntary remand.  HALLEX I-4-101, II, B.2 provides that when a subsequent social security claim has been allowed and a request for voluntary remand has been made, the Appeals Council will address the subsequent allowance along with the request.  A decision on a voluntary remand request is made based on the information provided unless that information is insufficient or inconsistent with the ALJ's determination.  HALLEX I-4-101, II, B.2  In that event, the Social Security Administration would generally seek a remand to address the issues.  Id.

Platon makes no argument, far less a showing, that the Social Security Administration failed to follow its own guidance, in his case.  Platon states only that he has made a request for a voluntary remand and that he is renewing his request in his

motion to remand.  Therefore, even if the court were to follow
the Fifth Circuit's minority position, Platon has not satisfied
the requirements for review.

As the Commissioner points out, for purposes of review under
§ 405(g) in the First Circuit, ordinarily the court is limited to
the evidence in the record at the time of the decision.  Mills v.
Apfel, 244 F.3d 1, 4-5 (1st Cir. 2001).  Section 405(g), Sentence
Six, allows the district court to order a case to be remanded to
consider additional evidence prior to a ruling on the merits, but
only for good cause.  Seavey, 276 F.3d 12-13.  Platon has not
made a showing of good cause as is required by Sentence Six.

Under the circumstances of this case, Platon has provided no
basis to review his request for a voluntary remand.


B.  Medical Evidence

Platon challenges the ALJ's finding that he had myofascial
pain syndrome and contends that the medical evidence supports a
diagnosis of fibromyalgia.  He further contends that the ALJ gave
the opinions that he is disabled, provided by Dr. Brooks and Dr.
Low, too little weight.  He argues that the ALJ gave Dr.
Hopkins's opinion, that the record did not show physical
disability, too much weight.

The ALJ attributes weight to a medical opinion based on a
variety of factors.  The factors include the nature of the
relationship between the medical source and the claimant, the
extent to which the opinion includes supporting information, the

consistency of the opinion with the record as a whole, the
specialization of the source, the source's understanding of the
administrative process, and the source's familiarity with the
claimant's record.  20 C.F.R. § 404.1527(d); see also SSR 96-2p,
1996 WL 374188 (July 2, 1996).  Opinions of a nonexamining
medical source are considered based upon the same factors, and
the ALJ will explain the weight given those opinions.
§ 404.1527(e)(2)(ii).

In this case, the ALJ credited Dr. Schneebaum's diagnosis of
myofascial pain syndrome instead of Dr. Brooks's diagnosis of
fibromyalgia.  The ALJ also relied on Dr. Hopkins's testimony at
the hearing that Platon's medical records did not support the
limitations Platon claimed.  Platon criticizes the ALJ's analysis
of the evidence and his conclusions.

Dr. Schneebaum, as a rheumatologist, is a specialist in the
medical area pertinent to Platon's complaints of pain.  Dr.
Schneebaum also examined Platon.  She diagnosed myofascial pain
syndrome, not fibromyalgia.[2]  Therefore, the ALJ properly relied
on Dr. Schneebaum's diagnosis.

Dr. Hopkins testified as an independent medical expert, and
she is board certified in internal medicine and occupational and
environmental medicine.  Dr. Hopkins reviewed all of Platon's

---

[2]Dr. Schneebaum's diagnosis distinguishes this case from the
situation in which the ALJ discounts a medical opinion of
fibromyalgia based on a lack of objective medical evidence.  See
Johnson v. Astrue, 596 F.3d 409, 411-12 (1st Cir. 2009).

medical records and noted that none of Platon's treating physicians had identified significant functional limitations based on examination results.  She testified that Dr. Brooks's functional capacity assessment was not consistent with the medical records.  Dr. Hopkins concluded that Platon would have no limitations with walking, sitting, or standing and no limitations on the use of his arms.  When a treating physician's opinion is inconsistent with the medical record, the Commissioner must resolve the inconsistency and may do so by relying on the opinion of an independent medical expert.  Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988); Chapin v. Astrue, 2012 WL 4499273, at *3-*4 (D.N.H. Sept. 28, 2012).

Platon emphasizes Dr. Brooks's examination notes in which he found Platon had pain and a decreased range of motion and argues that Dr. Brooks's records support his assessment done in August of 2010, showing that Platon's functional ability was severely limited by his physical impairments.[3]  The ALJ, however, specifically addressed the inconsistencies in Dr. Brooks's medical notes.  For example, on October 29, 2008, Dr. Brooks found Platon had a decreased range of motion while Dr. Schneebaum

---

[3]Platon also argues that Dr. Low's opinions support his claim of disabling pain.  Dr. Low, however, did not provide a functional capacity assessment.  Instead, Dr. Low's notes show that Platon had a full range of motion and no joint tenderness at one examination but that two months later, despite no acute distress, he demonstrated decreased range of motion and tenderness.  Dr. Low merely recorded Platon's complaints that he had pain related to fibromyalgia.

15

and PA McGinnis found good ranges of motion the month before and
the physical therapist found improved ranges of motion and
function the day after Dr. Brooks's examination.  The ALJ also
noted that Dr. Brooks found that Platon was in no acute distress
when he stated that Platon could not work.  In addition, the ALJ
also questioned Platon's use of Percocet for pain, based on Dr.
Hopkins's testimony.

Platon challenges Dr. Hopkins's opinions, particularly
because she never examined him.  Platon also asserts that Dr.
Hopkins conceded that objective medical evidence supported his
pain symptoms and Dr. Brooks's prescriptions for pain medication.
Both Dr. Hopkins and the ALJ acknowledged that Platon has pain.
The important distinction, however, is that they concluded that
Platon's pain does not cause disabling functional impairment.  As
Dr. Hopkins testified at the hearing, and the ALJ explained in
his decision, Platon's medical records support that conclusion.

Platon has not shown reversible error in the ALJ's
assessment of the medical opinion evidence.


C.  Credibility Determination

Platon contends that the ALJ erred in failing to credit his
subjective complaints of pain.  Specifically, Platon challenges
the ALJ's conclusion that his complaints were not supported by
the medical evidence and argues that the ALJ failed to follow the
directives provided by Social Security Ruling ("SSR") 96-7p.
Platon contends that his complaints are consistent with the

diagnosis of fibromyalgia and that the ALJ failed to consider Platon's back and spine pain.  Based on his challenge to the ALJ's credibility determination, Platon also challenges the ALJ's residual functional capacity finding.

As part of making a residual functional capacity finding, the ALJ must consider the relevant evidence but is not required to credit the claimant's allegations of his functional limitations if they are not supported by the medical record and the claimant's activities.  See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 194-95 (1st Cir. 1987).  The claimant's credibility is assessed based on consideration of several factors, which are the claimant's daily activities, functional restrictions, non-medical treatment, medications and side-effects, precipitating and aggravating factors, and the nature, location, onset, duration, frequency, radiation, and intensity of the pain.  See 20 C.F.R. § 404.1529(c)(3); Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). While the ALJ is expected to consider all of the relevant factors, he need not explicitly analyze each in the decision. Wenzel v. Astrue, 2012 WL 2679456, at *7 (D.N.H. July 6, 2012).

1.  SSR 96-7p

SSR 96-7p provides a two-step process for evaluating a claimant's symptoms, meaning the claimant's own description of

his impairments.[4]  Id. at *2.  The ALJ is directed to first decide
whether there is an underlying impairment that is shown by
medically acceptable diagnostic techniques and could be expected
to cause the claimant's symptoms.  Second, if such an impairment
is found, the ALJ must evaluate the intensity, persistence, and
limiting effects of the impairment or impairments.

In this case, the ALJ found that Platon has diverticulitis,
a history of polysubstance abuse, and myofascial pain syndrome.
Although Platon testified to severe functional limitations caused
by his physical impairments, the ALJ explained that the medical
evidence did not support Platon's testimony.  Therefore, the ALJ
followed the process provided by SSR 96-7p.  Cf. Ingle v. Astrue,
2010 WL 5070766, at *4-*6 (D.N.H. Nov. 8, 2010) (ALJ's cursory
statement that claimant's allegations were not substantiated by
medical evidence insufficient to comply with SSR 96-7p).

### 2.  Consistency with medical evidence and activities

Much of Platon's argument is based on his view that he has
fibromyalgia and that the ALJ improperly failed to find
fibromyalgia as an impairment.  As discussed above, the ALJ
appropriately relied on the opinions of Dr. Schneebaum and Dr.
Hopkins, which did not concur with Dr. Brooks's fibromyalgia
diagnosis.  Therefore, that part of Platon's argument fails.

--------

[4]Evaluation of Symptoms in Disability Claims: Assessing the
Credibility of an Individual's Statements, 1996 WL 374186 (S.S.A.
July 2, 1996).

Platon also contends that the ALJ failed to consider the medical evidence of pain associated with his back and spine and of the effects of his medications.  The ALJ did discuss the medical evidence of back and spine pain.  The ALJ noted that in April of 2008 an x-ray showed degenerative changes in the lumbar spine and that home exercise was recommended.  The ALJ reviewed the many medical reports when, despite Platon's complaints of back pain or body pain, examination results did not confirm his complaints but instead showed that he did not have positive straight leg raising pain, decreased range of motion, decreased mobility, or other results consistent with the pain he described. The ALJ noted that Percocet made Platon drowsy and that Dr. Hopkins testified that Percocet was not an appropriate medication for fibromyalgia and should not be prescribed for someone with a history of substance abuse.  The ALJ relied on Dr. Hopkins's opinion that the medical evidence did not support Platon's claims about the severity of his symptoms.

In addition, Platon challenges the ALJ's analysis of his activities of daily living, arguing that his activities were not inconsistent with the level of pain he claims.  The ALJ merely noted that Platon was capable of living independently and that he could take care of himself, make his own meals, do housekeeping, and shop when necessary.  The ALJ further noted that although Platon claimed concentration problems, he spent his time reading and watching television and drove himself on two-hour round trips two or three times each week to visit his children.  While the

19

ALJ considered Platon's activities, the ALJ appeared to rely more heavily on Dr. Hopkins's opinion as to the inconsistency between Platon's complaints about the severity of his pain and the medical evidence.

In sum, the ALJ properly considered Platon's subjective complaints about his symptoms and appropriately decided that Platon's complaints were not credible to the extent they would preclude the residual functional capacity the ALJ determined.

D.   Residual Functional Capacity

Platon contends that the ALJ failed to provide a basis for his residual functional capacity assessment.  Platon is mistaken.

A residual functional capacity assessment determines the most a person can do in a work setting despite his limitations caused by impairments.  20 C.F.R. § 404.1545(a)(1).  The Commissioner's residual functional capacity assessment is reviewed to determine whether it is supported by substantial evidence.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Pacensa v. Astrue, 848 F. Supp. 2d 80, 87 (D. Mass. 2012).

The ALJ found that Platon retains the functional capacity to do work at the medium exertional level but is limited to only occasionally doing postural activities, such as stooping and crawling.  In making that determination, the ALJ considered the medical evidence of Platon's limitations and Platon's complaints about the severity and persistence of his pain.  The ALJ rejected

Dr. Brooks's assessment as inconsistent with the medical record. The ALJ relied on Dr. Hopkins's opinion that Platon was not limited in his ability to sit, stand, and walk; that he had no limitations in using his arms and hands; but that he should avoid heavy lifting and work that required more than occasional postural activities.  As such, the record includes substantial evidence to support the ALJ's residual functional capacity assessment.

### Conclusion

For the foregoing reasons, the plaintiff's motion to reverse and remand (document no. 14) is denied.  The Commissioner's motion to affirm (document no. 17) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

November 13, 2012

cc:  Stephan Patrick Parks, Esq.
     T. David Plourde, Esq.